**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 07-4126**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

PEDRO SOSA-SAUCEDA,

Defendant - Appellant.

---

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Frank D. Whitney, District Judge.  (3:01-cr-00220-ALL)

---

Argued: November 2, 2007          Decided: January 7, 2008

---

Before MOTZ and GREGORY, Circuit Judges, and Claude M. HILTON, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

---

Affirmed in part, reversed in part and remanded for resentencing by unpublished per curiam opinion.

---

**ARGUED:** Ann Loraine Hester, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant.  Steven R. Kaufman, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.  **ON BRIEF:** Steven Slawinski, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant.  Gretchen C. F. Shappert, United States Attorney, Jonathan A. Vogel, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

On January 24, 2007, the United States District Court for the Western District of North Carolina sentenced Appellant Pedro Sosa-Sauceda to a term of twenty-four months imprisonment after Sosa-Sauceda admitted guilt to several supervised release violations. Sosa-Sauceda now appeals to this Court alleging the district court (1) lacked subject matter jurisdiction over his supervised release revocation proceeding, (2) committed prejudicial error by failing to recognize his allocution rights and (3) imposed an unreasonable sentence. We find the district court had subject matter jurisdiction over Sosa-Sauceda's supervised release revocation proceeding. However, we find the district court's failure to recognize Sosa-Sauceda's allocution rights to be plain error that affected Sosa-Sauceda's substantial rights. Since we find prejudicial error with regards to the allocution issue, we need not consider whether the sentence imposed by the district court was unreasonable.

I.

In 1995, Sosa-Sauceda, a Mexican citizen, was deported to Mexico after completing a prison sentence in Texas for murder. In 1996, Sosa-Sauceda was sentenced by Mexican authorities to a prison term for the transportation of marijuana. While serving his Mexican sentence, Sosa-Sauceda falsely claimed to Mexican

authorities that he was a United States citizen and provided a fraudulent birth certificate to substantiate his claim. Sosa-Sauceda sought a transfer of his sentence to the United States, pursuant to 18 U.S.C. § 4100, et seq., where he would complete the remaining term of his imprisonment. Though the record is silent on this point, United States officials apparently conducted a verification of consent hearing, as required by 18 U.S.C. § 4108, and found that Sosa-Sauceda knowingly and voluntarily consented to the transfer and understood the conditions and consequences of the transfer, including the fact that his consent would be irrevocable. See id. at § 4108(b)-(d). Sosa-Sauceda's sentence was thereafter transferred from Mexico to the United States, though the precise date is not clear from the record. Upon transfer, the United States Parole Commission added a term of supervised release to his sentence. In November 2001, Sosa-Sauceda completed his term of imprisonment at a federal prison in Texas and began his term of supervised release in the Western District of North Carolina, the district in which Sosa-Sauceda resided.

In 2002, while on supervised release, Sosa-Sauceda returned to Mexico, leading his probation officer to file a petition alleging Sosa-Sauceda violated the terms of his supervised release. At some point thereafter, he again returned to the United States. In December of 2005, he was found by authorities in the Southern District of Texas and was charged with illegal reentry, pursuant to

8 U.S.C. § 1326(a) and § 1326(b), based on his previous deportation in 1995.  Sosa-Sauceda pled guilty to illegal reentry and was sentenced to forty-six months imprisonment in the Southern District of Texas.  He was then transferred to the Western District of North Carolina for a supervised release revocation proceeding related to his transferred Mexican marijuana conviction.

Sosa-Sauceda moved to dismiss the revocation proceeding on the ground that the court lacked personal jurisdiction over him.  He argued that his sentence had been improperly transferred to the United States because he was not a United States citizen, and because the transfer was improper, the imposition of supervised release was invalid and the court lacked personal jurisdiction over him.  The court denied the motion and found that Sosa-Sauceda had waived personal jurisdiction by lying to Mexican authorities about his citizenship.  He did not argue the court lacked subject matter jurisdiction.  On December 20, 2006, the district court found Sosa-Sauceda in violation of the terms of his supervised release.  The Guidelines' range for the offense was eight to fourteen months. The district court sentenced Sosa-Sauceda to the statutory maximum twenty-four months imprisonment to run consecutively with the forty-six month illegal reentry sentence imposed by the district court in the Southern District of Texas.

Though the district court heard argument from counsel for both parties, the court never personally addressed Sosa-Sauceda or asked

whether he wanted to address the court.  Sosa-Sauceda did not object to the court's failure to permit him to allocute.

## II.

Sosa-Sauceda alleges the district court lacked subject matter jurisdiction over his supervised release revocation proceeding, an issue he did not raise at the district court.  However, "a party can challenge subject matter jurisdiction for the first time on appeal even though, in most contexts, issues not raised below are considered waived."  Am. Canoe Ass'n v. Murphy Farms, 326 F.3d 505, 515 (4th Cir. 2003) (citing Wisconsin Dep't of Corr. v. Schatt, 524 U.S. 381, 389 (1998)).  See also United States v. Beasley, 495 F.3d 142, 147 (4th Cir. 2007) ("the lack of subject matter jurisdiction can be raised at any time").  Thus, whether the district court had subject matter jurisdiction is a question of law subject to de novo review.  United States v. Barton, 26 F.3d 490, 491 (4th Cir. 1994).

The Treaty between the United States of America and the United Mexican States on the Execution of Penal Sentences, Nov. 25, 1976, U.S.-Mex., 28 U.S.T. 7399,[1] as implemented by 18 U.S.C. § 4100, et seq., allows citizens of the United States convicted in Mexico to serve their sentences in the United States.  In order to be transferred from Mexico to the United States, the offender must be

---

[1]The Treaty is sometimes referred to as the "United States-Mexico Prisoner Transfer Treaty."

a citizen or national of the United States and knowingly and voluntarily consent to the transfer. 18 U.S.C. § 4100(b). The offender's consent to transfer must be verified by a United States verifying officer, defined as a United States Magistrate Judge or a citizen specifically designated by a United States Judge. Id. at § 4108. Once the offender's consent is verified, it is irrevocable. Id. at § 4100(b).

Upon the offender's transfer to the United States, the United States Parole Commission determines the release date and any period or conditions of supervised release. Id. at § 4106A(b)(1)(A). The offender then serves the sentence "as though the offender were convicted in a United States district court of a similar offense." Id. During any period of supervised release, the offender is to be supervised by the United States district court for the district in which the offender resides. Id. at § 4106A(b)(3). If, at any point after the transfer to the United States, the offender wishes to challenge the validity or legality of the transfer, the offender must comply with 18 U.S.C. § 3244(5), which provides:

> [A]ll proceedings instituted by or on behalf of an offender seeking to challenge the validity or legality of the offender's transfer to the United States shall be brought in the United States district court of the district in which the offender is confined or of the district in which supervision is exercised and shall name the Attorney General and the official having immediate custody or exercising immediate supervision of the offender as respondents. The Attorney General shall defend against such proceedings.

Id. at § 3244(5).

7

Sosa-Sauceda argues the district court lacked subject matter jurisdiction over his supervised release revocation proceeding because he was not, in fact, a citizen of the United States. He argues that because his initial transfer to the United States was improper, the subsequent imposition of supervised release was invalid. Because the imposition of supervised release was invalid, the district court lacked subject matter jurisdiction over Sosa-Sauceda's supervised release revocation proceeding. Sosa-Sauceda argues the fact that the transfer was a result of his own fraudulent actions is irrelevant because subject matter jurisdiction is not waivable.

Sosa-Sauceda's argument is belied by the statutory scheme governing prisoner transfers under the Treaty. See id. at §§ 4100, 4106A, 3244(5). When he was transferred to the United States, he received an amended sentence from the United States Parole Commission, which included a period of supervised release. Importantly, this amended sentence was to be served by "as though [he] were convicted in a United States district court of a similar offense." Id. at § 4106A(b)(1)(A). Thus, Sosa-Sauceda was to serve his sentence as though he were convicted in a United States district court of transportation of marijuana. United States district courts have subject matter jurisdiction over drug prosecutions brought under the federal drug laws. See id. at § 3231 ("district courts of the United States shall have original

8

jurisdiction . . . of all offenses against the laws of the United States"); 21 U.S.C. § 841(a) ("it shall be unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense . . . a controlled substance"). Additionally, the district court in which Sosa-Sauceda resided had jurisdiction to supervise him during his period of supervised release. See 18 U.S.C. 4106A(b)(3). Therefore, the district court had subject matter jurisdiction over the supervised release revocation proceeding.

Sosa-Sauceda may not use an appeal of his supervised release revocation proceeding to challenge the validity or legality of his transfer to the United States. In order to challenge the validity or legality of his transfer, Sosa-Sauceda must comply with the statutory requirements set forth in 18 U.S.C. § 3244(5). Namely, he must bring a proceeding in the district court in which he is being confined or supervised and must "name the Attorney General and the official having immediate custody or exercising immediate supervision of [him] as respondents." Id. at § 3244(5). Sosa-Sauceda has not brought such a proceeding. Instead, he seeks to challenge the validity and legality of his transfer on the appeal of his supervised release revocation proceeding. This is not the proper avenue by which a prisoner can challenge a transfer under the Treaty. Absent a proceeding which complies with § 3244(5), we are to treat the sentence, including the imposition of supervised release, as though it were imposed by a United States district

court.  See id. at § 4106A(b)(1)(A).  Treating the sentence as such, we find the district court had subject matter jurisdiction over the supervised release revocation proceeding.


III.

Sosa-Sauceda next alleges the district court committed prejudicial error by failing to recognize his right to allocution. This Court reviews issues not preserved before the district court for plain error, which requires "error, that is plain, and that affects [the] substantial rights" of the defendant.  United States v. Olano, 507 U.S. 725, 732 (1993) (internal quotations omitted). Even if the error is plain, correction of the error remains within the discretion of this Court, which we "should not exercise . . . unless the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'"  Id. (quoting United States v. Young, 470 U.S. 1, 15 (1985)).

Federal Rule of Criminal Procedure 32.1(b)(2)(E) specifically provides defendants at supervised release revocation proceedings with "an opportunity to make a statement and present any information in mitigation."  The defendant's allocution right is "not satisfied by 'merely affording the [d]efendant's counsel the opportunity to speak," but must be extended personally to the defendant by the court.  United States v. Cole, 27 F.3d 996, 998

10

(4th Cir. 1994) (quoting Green v. United States, 365 U.S. 301, 304 (1961)).

We find the district court's failure to recognize Sosa-Sauceda's right to allocution to be plain error that affected his substantial rights and we exercise our discretion to notice the error. In United States v. Muhammad, we held that the mere possibility that a defendant could receive a lesser sentence had the defendant been permitted to allocute at resentencing was sufficient to prejudice the defendant. 478 F.3d 247, 251 (4th Cir. 2007). Here, Sosa-Sauceda was sentenced to the statutory maximum twenty-four months imprisonment, even though the applicable Guidelines' range advised a sentence of eight to fourteen months imprisonment. Had he been given an opportunity to address the court, he may have been able to explain the circumstances surrounding his supervised release revocation or his criminal history in such a way that would have affected the court's sentencing determination. Because this possibility remains, we find Sosa-Sauceda to have been prejudiced by the court's failure to permit him to allocute and we exercise our discretion to notice the error.[2]

---

[2]In United States v. O'Hallaren, 505 F.3d 633 (7th Cir. 2007), the Seventh Circuit recently addressed a district court's failure to recognize a defendant's right to allocution at a revocation of supervised release proceeding. The Seventh Circuit vacated and remanded for resentencing upon finding the failure to be prejudicial error that affected the defendant's substantial rights. Id. at 636.

Because we find the district court's failure to recognize Sosa-Sauceda's right to allocution to be plain error that affected his substantial rights, we vacate his sentence and remand to the district court for resentencing. Because we find prejudicial error with regards to the allocution issue, we need not consider whether the sentence imposed by the district court was unreasonable.

IV.

For the foregoing reasons, the judgment of the district court is AFFIRMED in part, REVERSED in part and REMANDED for resentencing consistent with this opinion.

<u>AFFIRMED IN PART,</u>
<u>REVERSED IN PART AND</u>
<u>REMANDED FOR RESENTENCING</u>