PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-4396

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JORI SHAMIR FERGUSON,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. Henry E. Hudson, District Judge. (3:01-cr-00192-HEH-1)

Argued: March 20, 2014                    Decided: May 21, 2014

Before GREGORY and KEENAN, Circuit Judges, and DAVIS, Senior Circuit Judge.

Reversed and remanded by published opinion. Judge Gregory wrote the opinion, in which Senior Judge Davis joined. Senior Judge Davis wrote a separate concurring opinion. Judge Keenan wrote a dissenting opinion.

**ARGUED:** Nia Ayanna Vidal, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Richmond, Virginia, for Appellant. Michael Calvin Moore, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** Michael S. Nachmanoff, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Neil H. MacBride, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

GREGORY, Circuit Judge:

This is an appeal from a district court judgment revoking Jori Ferguson's supervised release. The district court found that Mr. Ferguson had violated the terms of his supervised release by, among other things, possessing marijuana. The district court's finding relied in part on a laboratory report prepared by a forensic examiner who did not testify at the hearing. We hold that the district court erred by denying Mr. Ferguson a chance to cross-examine this forensic examiner. Accordingly, we vacate Mr. Ferguson's sentence and remand.

I.

Jori Ferguson has spent ten of the last thirteen years in prison and the remaining time on supervised release. He first lost his liberty when he was nineteen years old, so he has spent roughly one third of his life under varying levels of government supervision, including essentially all of the years he would have otherwise been adjusting to adulthood.

After serving nearly a decade in prison, Mr. Ferguson began his first period of supervised release in 2010, which was soon revoked after a series of violations, most related to drug use. After a second term in prison, Mr. Ferguson entered supervised release again, but after initial success, he once more struggled to abide by the terms of his release. In 2012, Mr. Ferguson was

2

convicted of possession of drug paraphernalia.  The following year, Mr. Ferguson failed a drug test for marijuana.  In the same year, he was arrested twice and did not tell his probation officer.  At the revocation hearing, Mr. Ferguson admitted to these four violations.

In addition, Mr. Ferguson was accused of two more serious violations which he contested at his revocation hearing, one of which is the crux of this appeal.  On March 16, 2013, Officer Jonathan McDonald of the Chesterfield County Police Department received a report of a domestic dispute in a vehicle driven by Mr. Ferguson.  Officer McDonald pulled the car over, and when he approached, he smelled marijuana.  Officer McDonald searched the car and found several plastic bags of a substance which, based on his experience, he presumed was marijuana, as well as $470 in cash and an ATM receipt for $300.  In the squad car after being arrested, Mr. Ferguson admitted that he was a marijuana dealer.

The marijuana was sent to a forensic laboratory, which confirmed the weight and nature of the substance.  The analysis was conducted by analyst Jennifer Clary.  Ms. Clary did not testify at the revocation hearing.  The lab report lacks any information regarding what kind of test was conducted, confidence intervals for the analyses performed, the measurement instruments used, Ms. Clary's background, or whether proper chain of custody procedure was followed.  There is no

3

information on the rate of false positives in the type of exam used, or on the rate of false negatives, both of which would be necessary to assess the reliability of the exam's conclusions. The lab report was introduced during the revocation hearing by Officer McDonald during his testimony. However, Officer McDonald did not perform the analysis and has no expertise in chemistry.

The district judge found that the facts above established that Mr. Ferguson violated his supervised release by possessing marijuana. Based on this violation, the four additional violations that Mr. Ferguson admitted to, and another incident of drug possession, the judge sentenced Mr. Ferguson to forty-two months in prison.

Mr. Ferguson filed a timely appeal. He argues that in the absence of a government showing of good cause for the chemist's unavailability, it was a violation of Federal Rule of Criminal Procedure 32.1(b)(2)(C) to admit a laboratory report without calling the chemist to testify.[1]

---

[1] In addition, Mr. Ferguson argues that the district court abused its discretion in relying on field tests to find Ferguson guilty for the other instance in which he allegedly possessed drugs. He also argues that his sentence was substantively and procedurally unreasonable, and that this error was plain. Because we find that Mr. Ferguson prevails on his Rule 32.1(b)(2)(C) argument, we need not reach these issues.

4

II.

We review a district court's evidentiary ruling in a revocation hearing for abuse of discretion. United States v. Doswell, 670 F.3d 526, 529 (4th Cir. 2012). Revocation hearings are less formal than trials of guilt, where "the full panoply of rights due a defendant" are in effect. Morrissey v. Brewer, 408 U.S. 471, 480 (1972). Nonetheless, from the defendant's perspective, trials and revocation hearings are similar in that the end result may be a loss of liberty. Accordingly, some due process rights apply. Id. at 487–88. In Morrissey, the Supreme Court explicitly identified "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)" as one of several "minimum requirements of due process" that apply to revocation hearings. Id. at 488–89. These requirements are formalized in the Federal Rules of Criminal Procedure. Under Rule 32.1, defendants are entitled to "an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." Fed. R. Crim. P. 32.1(b)(2)(C).

Our holding in Doswell, wherein we announced a balancing test governing the application of Rule 32.1(b)(2)(C), is directly on point and mandates reversal here. See 670 F.3d at

5

530–31.  In that case, the government sought to introduce a laboratory report without calling the chemist who wrote the report.  Id. at 528–29.  The district court admitted the report as evidence.  Id. at 529.  The government failed to provide good cause for the chemist's absence.  Id.  Nonetheless, the district court concluded that the drug analysis report was reliable enough on its face to be admitted as evidence.  Id.  On appeal, we reversed and held that "Rule 32.1(b)(2)(C) specifically requires that, prior to admitting hearsay evidence in a revocation hearing, the district court must balance the releasee's interest in confronting an adverse witness against any proffered good cause for denying such confrontation."  Id. at 530.  We noted that the reliability of the evidence is a "critical factor in the balancing test under Rule 32.1."  Id. at 531.  However, as the Seventh Circuit described, "reliability cannot be the beginning and end of the 'interest of justice' analysis."  United States v. Jordan, 742 F.3d 276, 280 (7th Cir. 2014) (joining this Court in adopting a balancing test for hearsay evidence in revocation hearings).  Put simply, unless the government makes a showing of good cause for why the relevant witness is unavailable, hearsay evidence is inadmissible at revocation hearings.

In  Mr.  Ferguson's  revocation  hearing,  the  government introduced  a  laboratory  report  through  Officer  McDonald's

6

testimony, but it proffered no explanation for the laboratory expert's absence. Thus, there was zero showing of good cause. Instead, the district court allowed Officer McDonald to read the laboratory report into evidence because the report was "on official stationery with an official envelope" and was "signed by a forensic examiner from the Commonwealth of Virginia." J.A. 34. In closing arguments, when Mr. Ferguson renewed his objection to the introduction of the laboratory report, the district court clarified that other evidence corroborated the report. Thus, the judge first explicitly ruled that reliability alone justified introduction of the report. Then during closing arguments, the judge made an implicit harmlessness finding by concluding that other evidence sufficiently corroborated the report's conclusions. Either way, the district court committed legal error.

As we held in <u>Doswell</u>, "the district court <u>must</u> balance the releasee's interest in confronting an adverse witness against any proffered good cause for denying such confrontation." <u>Doswell</u>, 670 F.3d at 530 (emphasis added). Reliability is an important factor but not a dispositive one. Relying on the stationery on which the report appears as evidence of reliability does not obviate the requirement to show good cause. Similarly, the existence of corroborating evidence does not relieve the government's burden of proffering a sufficient

7

justification for the absence of the witness.  Because there was no evidence of good cause, as <u>Doswell</u> requires, the introduction of the laboratory report was error.

### III.

The government argues that even if there was a clear legal error here given the rule stated in <u>Doswell</u>, this error was harmless.  Echoing the district court's implicit harmlessness finding made during closing statements, the government points out that Mr. Ferguson was found to have committed other violations of his supervised release, and these violations could have supported the sentence that was ultimately imposed.  Further, Officer McDonald testified that he detected a marijuana odor in Mr. Ferguson's car and that Mr. Ferguson admitted to selling drugs.[2]  Thus, even without the laboratory report, the

---

[2]  We note that Mr. Ferguson never admitted that the substance found in the car before that arrest was marijuana.  During his testimony, Officer McDonald described a conversation he had with Mr. Ferguson immediately after the arrest.  Officer McDonald said that "We discussed selling drugs" and testified that Ferguson admitted that he does sell drugs.  J.A. 35.  Officer McDonald was then asked "did [Ferguson] say anything to you about the specific drugs . . . that you found that day in his car?"  Officer McDonald's response was that Ferguson "stated that he sells marijuana."  <u>Id.</u>  Thus, based on McDonald's testimony, there is no clear indication that Ferguson admitted to the nature of the substance removed from the car, though Ferguson did clearly admit to having dealt marijuana previously.

government argues that adequate support exists for the district court's sentence.

As a preliminary matter, we must define the correct harmless error standard which applies here. The legal error in this case is in some ways a constitutional one, since it involves Mr. Ferguson's due process rights. As noted above, the right to confrontation absent a good cause showing was first announced by the Supreme Court as one of the "minimum requirements of due process." Morrissey, 408 U.S. at 489. Thus, the violation here involves constitutional considerations. At the same time, the parameters of Mr. Ferguson's due process right to confrontation are set forth by statute in Rule 32.1. See Doswell, 670 F.3d at 530. This distinction between a constitutional versus a non-constitutional right changes the harmless error standard that we must apply. Constitutional errors must be found harmless beyond a reasonable doubt, whereas reversal of a non-constitutional error requires lesser proof. Compare Chapman v. California, 386 U.S. 18, 23 (1967) ("[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.") with Kotteakos v. United States, 328 U.S. 750 (1946) (defining harmless error review as ensuring that an error was not harmless only if it had a "substantial and injurious effect or influence in determining the jury's

9

verdict"); see United States v. Evans, 216 F.3d 80, 89–90 (D.C. Cir. 2000) (describing how erroneous admission of hearsay evidence may run afoul of the Rules of Evidence, implicating Kotteakos, or the Confrontation Clause, implicating Chapman). As such, we must resolve whether the Kotteakos or Chapman standard applies here.

Doswell compels the conclusion that the Kotteakos standard applies. Our reasoning in that case shows that our formulation of the required balancing test is based on an interpretation of Rule 32.1, as modified in 2002 -- not on Morrissey itself. Doswell, 670 F.3d at 531 n.1 (noting as a contrast to its own reasoning that "[s]ome circuits have held that Morrissey itself requires a balancing test"). Understood this way, the district court violated a requirement of Rule 32.1, and this requirement does not flow directly from Morrissey or due process. As such, the district court's error is more properly understood as a garden-variety evidentiary mistake, not a constitutional one. See United States v. Seidel, 620 F.2d 1006, 1013 n.13 (4th Cir. 1980). Thus, the proper harmlessness test must ensure that the error had no "substantial and injurious effect or influence" on the outcome, not whether the error was harmless beyond a reasonable doubt.

Under either standard, the policy behind the harmless error standard guides our application of it. The rule was put in

10

place to prevent "courts of review" from "tower[ing] above the trials of criminal cases as impregnable citadels of technicality." Kotteakos, 328 U.S. at 759 (1946) (quoting Marcus A. Kavanagh, Improvement of Administration of Criminal Justice by Exercise of Judicial Power 11 A.B.A.J. 217, 222 (1925)). Thus, we will not reverse every decision that contains a legal error without regard to how inconsequential the error may be. Instead, reversal is reserved for more serious errors that affect substantial rights or that directly affect the outcome of a case. Kotteakos, 328 U.S. at 765 (looking to both the effect of an error on a judgment and to whether substantial rights are affected).

After reviewing the record, we cannot conclude that the legal error in this case had "but very slight effect" on the district court's decision. Kotteakos, 328 U.S. at 764. The district judge imposed a severe sentence on Mr. Ferguson, going nine months above the maximum recommended sentence under the guidelines. Though Mr. Ferguson was found guilty of six violations, two of these were much more serious than the others because they involved possession of large amounts of narcotics. The effect of the nature and frequency of these violations is plainly evident, as the judge reasoned that "what is serious about this case" is Mr. Ferguson's "continuing course of conduct . . . of violating the nation's drug laws, not just for personal

11

use, but commercially." J.A. 68. Thus, the district judge relied heavily on the fact that Mr. Ferguson possessed substantial amounts of drugs on more than one occasion. Given this reasoning, we cannot say that the legal error was harmless when it calls into question one of the two violations suggesting commercial use of drugs.

Furthermore, the error in this case implicated one of Mr. Ferguson's core procedural rights. Considering the importance and deeply-rooted history of the constitutional right to confrontation, its violation is much more substantive than the type of technical or nominal error that originally motivated the harmless error standard. The Supreme Court has described the right to cross-examination as "the constitutionally prescribed method of assessing reliability." Crawford v. Washington, 541 U.S. 36, 62 (2004). "Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty." Id. While the instant case does not involve the Sixth Amendment, the Supreme Court's reasoning in Crawford illustrates the idea that stripping a defendant of the confrontation right may create significant harms that are invisible after the fact. Even if a defendant may seem obviously guilty, we must test that impression through the mechanism of a jury trial. In the same

12

way, cross-examination is the mechanism favored in our system to test the government's assertion that evidence is reliable.

Our decision today heeds Crawford's reasoning as well as more recent warnings from the Supreme Court about forensic evidence. Because cross-examination is such a vital tool for the defendant, it is difficult, after the fact, to assess the full harm of a legal error such as the one in this case. This is because stripping a defendant of the confrontation right shields potentially grievous errors made by the chemist. If the forensic analyst in this case had used a magic eight ball instead of a spectrometer to assess whether the substance was marijuana, the defendant would have no way to find out. Putting the outlandish aside, the Supreme Court has warned that forensic techniques that wrap themselves in a veneer of science can be riddled with subjectivity, with outdated, unreliable methods, and with a lack of standardization that poses grave risks to our system of justice. Melendez-Diaz v. Massachusetts, 557 U.S. 305, 319–20 (2009). Given this, a bare-bones conclusion such as "[t]he substance was found to contain: Cocaine," id. at 320, is a problematic foundation on which to rest a revocation of supervised release, even if this conclusion appears "on official stationary with an official envelope." J.A. 34. We have found no scientific or legal support for the proposition that the type of letterhead can cure pseudoscience or shoddy methodology. To

13

be sure, there is no indication in this case that the forensic techniques used were problematic.  But this should come as no surprise:  it is the very legal error that was committed that prevents the defendant from searching for these indications of harm in the first place.  Given this, and given that the marijuana possession violation in question is much more serious than the other violations Mr. Ferguson committed, we cannot conclude that the legal error here had no significant effect on Mr. Ferguson's sentence.

Finally, we emphasize our displeasure with the government's barefaced failure to abide by our command in <u>Doswell</u>.  In many cases, a facially compelling harmlessness argument can be made because, as noted above, defendants who have been stripped of their confrontation rights will be hard-pressed to point to concrete symptoms of the constitutional harm that afflicts them. We refuse to let the government take advantage of this reality, essentially ignoring our command in <u>Doswell</u> by using harmlessness as a substitute for proper procedure.  Because we meant what we said in <u>Doswell</u>, and because we cannot conclude with adequate assurance that the clear legal error in this case was harmless, we reverse and remand.

<u>REVERSED AND REMANDED</u>

14

DAVIS, Senior Circuit Judge, concurring:

I am pleased to join in full Judge Gregory's opinion. I offer a few words of encouragement to our somewhat beleaguered district court colleagues.

As a former district judge myself, I am fully aware that supervised release revocation hearings are surely way down on the list of things that keep busy district judges and equally busy Assistant United States Attorneys up at night. Indeed, supervised release revocation hearings generally mean far more to the dedicated and equally busy Probation Officers who, as one once told me, view revocation hearings as "failures." This is because they work with great dedication and attention to help their supervisees stay on a rehabilitative path. Reappearance before the judge signals something of a lost cause.

No doubt it has struck some district judges as seemingly peculiar that we have reversed, vacated, and remanded a surfeit of these cases in the last few years. See United States v. Doswell, 670 F.3d 526 (4th Cir. 2012); United States v. Woods, --- Fed. Appx. ---, 2014 WL 1146975 (4th Cir. 2014); United States v. Banks, 542 Fed. Appx. 218 (4th Cir. 2013); see also, e.g., United States v. Thompson, 595 F.3d 544 (4th Cir. 2010); United States v. Pegram, --- Fed. Appx. ---, 2014 WL 572348 (4th Cir. 2014); United States v. Chaimowitz, --- Fed. Appx. ---, 2014 WL 448443 (4th Cir. 2014); United States v. Waller, ---

15

Fed. Appx. ---, 2013 WL 6727896 (4th Cir. 2013); United States v. Stallins, 521 Fed. Appx. 104 (4th Cir. 2013); United States v. Cazeau, 518 Fed. Appx. 139 (4th Cir. 2013); United States v. Fisher, 514 Fed. Appx. 324 (4th Cir. 2013); United States v. Pate, 503 Fed. Appx. 216 (4th Cir. 2013); United States v. Conner, 495 Fed. Appx. 367 (4th Cir. 2012); United States v. Redwine, 488 Fed. Appx. 727 (4th Cir. 2012); United States v. Brooks, 472 Fed. Appx. 236 (4th Cir. 2012); United States v. Conyers, 469 Fed. Appx. 152 (4th Cir. 2012); United States v. Carter, 468 Fed. Appx. 351 (4th Cir. 2012); United States v. Summers, 448 Fed. Appx. 337 (4th Cir. 2011); United States v. Tossie, 442 Fed. Appx. 844 (4th Cir. 2011); United States v. Rumbo-Bustos, 392 Fed. Appx. 221 (4th Cir. 2010); United States v. Ford, 384 Fed. Appx. 274 (4th Cir. 2010); United States v. Martinez, 383 Fed. Appx. 363 (4th Cir. 2010); United States v. Johnson, 380 Fed. Appx. 265 (4th Cir. 2010); United States v. Caste-Lopez, 379 Fed. Appx. 286 (4th Cir. 2010); United States v. Tolbert, 373 Fed. Appx. 363 (4th Cir. 2010); United States v. Sosa-Sauceda, 260 Fed. Appx. 589 (4th Cir. 2008). After all, an offender who has committed acts or omissions that involve an "inherent breach of trust", as a violation of supervised release is characterized, United States v. Moulden, 478 F.3d 652, 655 (4th Cir. 2007), surely has "it" coming to him or her, and the

16

sooner the better if the sanction is to have any beneficial effect.

But there are good and sufficient reasons for the scrutiny we give to supervised release revocation cases.

First, as the majority opinion in this very case shows, these are high stakes proceedings, proceedings that take on the character of serious criminal prosecutions. The rights guaranteed to defendants in actual criminal prosecutions do not apply with their customary force, of course, but a forty-two month sentence on an offender whose principal sin is an inability to defeat his addiction to marijuana (and the related wrongfulness of selling small amounts of the drug), such as the one imposed here by the district court on Jori Ferguson, is serious business. The Federal Rules of Criminal Procedure set forth the minimal standards of process to which such offenders are entitled; they are not onerous burdens on prosecutors and judges. There are few "I"s to dot and few "T"s to cross; accordingly, "I"s should be dotted and "T"s crossed if only for the sole reason that it is so very simple to do.

Second, and beyond the weighty considerations mentioned above, there is the additional consideration that we published our opinion in United States v. Doswell, 670 F.3d 526 (4th Cir. 2012), more than one year before the revocation hearing in this case was held. Doswell is virtually on all fours with this case.

17

We think it is a good idea if even busy Assistant United States Attorneys read our published opinions and prepare their cases accordingly. This case is a useful reminder of that truism; for prosecutors, neither failure nor inattention to the simple rules of the road should be an option.

BARBARA MILANO KEENAN, Circuit Judge, dissenting:

I disagree with the majority's harmless error analysis and would affirm the district court's judgment.[*]  Therefore, I respectfully dissent.

Initially, I would employ the more strict standard for harmless error review established in Chapman v. California, 386 U.S. 18 (1967).  In my view, Ferguson's due process right to a fair revocation hearing has been violated and requires that this Court evaluate whether the district court's error was harmless beyond a reasonable doubt.  See id. at 24.  I reach this conclusion notwithstanding the fact that a releasee's rights in a revocation proceeding are not as great as the rights of a defendant facing criminal prosecution.  See Morrissey v. Brewer, 408 U.S. 471, 480 (1972).

In United States v. Doswell, we explained that the Supreme Court has held that a "person facing revocation of release possesses a due process 'right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation).'"  670 F.3d 526, 530 (4th Cir. 2012) (quoting Morrissey, 408 U.S. at 489).  Indeed,

---

[*]  With regard to Ferguson's other arguments raised on appeal, I would conclude that the district court did not err in determining that the "field test" conducted on Ferguson on April 12, 2013 was reliable.  I would also conclude that the district court's imposition of a 42-month sentence was reasonable.

19

the majority recognizes that the district court's error in the present case "implicated one of Mr. Ferguson's core procedural rights" relating to the constitutional right to confrontation, and that the error was "more substantive than the type of technical or nominal error that originally motivated the harmless error standard." Supra at 12. Because the error at issue violated Ferguson's due process right to a fair revocation hearing, I think that the lesser standard of harmless error set forth in Kotteakos v. United States, 328 U.S. 750 (1946), is inadequate to evaluate the error's impact.

Nevertheless, applying the Chapman standard, I would conclude that the district court's error in the present case was harmless beyond a reasonable doubt. The evidence was overwhelming that Ferguson violated the terms of his supervised release by possessing marijuana with the intent to distribute. The district court credited the arresting officer's testimony that he smelled marijuana in Ferguson's vehicle, and that a search of the vehicle resulted in the discovery of what the officer concluded was marijuana, "packaged and quantified in a fashion consistent with an intent to distribute." The arresting officer further testified that Ferguson admitted that he sold marijuana. Based on this record, which is particularly strong given Ferguson's statement to the arresting officer, I would hold that it is clear beyond a reasonable doubt that the court's

erroneous admission of the laboratory report did not affect the judgment rendered in this case. See Chapman, 386 U.S. at 24.

Finally, I note my strong agreement with Judge Davis' remarks in his concurring opinion cautioning prosecutors to follow carefully our opinion in Doswell. My view in this case that the district court's error was harmless does not affect my concern that the government must act diligently to ensure that revocation proceedings be conducted fairly in accordance with the plain requirements of Federal Rule of Criminal Procedure 32.1(b)(2)(C).