UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-4157

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

GEORGE ROYAL BROWN,

Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington.  James C. Dever III, Chief District Judge.  (7:15-cr-00039-D-1)

Argued:  March 21, 2017                                   Decided:  August 28, 2017

Before MOTZ, TRAXLER, and AGEE, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED**: Eric Joseph Brignac, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  Phillip Anthony Rubin, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF**: Thomas P. McNamara, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  John Stuart Bruce, United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

PER CURIAM:

After admitting hearsay evidence at a revocation hearing, the district court revoked George Royal Brown's supervised release and sentenced him to thirty months in prison. On appeal, Brown challenges his sentence. We affirm the judgment of the district court because we conclude that if there was error, it was harmless error.

I.

Brown pleaded guilty to mail theft, bank fraud, and conspiracy to commit bank fraud in the U.S. District Court for the Eastern District of Virginia. At the time he committed these offenses, he was on supervised release for his conviction in the U.S. District Court for the Middle District of Pennsylvania for conspiracy to commit check fraud. He was sentenced in July 2009 to a prison term of sixty-three months with five years of supervised release, and he was also ordered to pay more than $100,000 in restitution. The terms of his supervised release included notifying his probation officer before any change in residence, submitting to drug testing, and making monthly restitution payments. Brown was released from prison in October 2013, and his supervised release was transferred to the U.S. District Court for the Eastern District of North Carolina in April 2015.

In June 2015, Brown's probation officer filed a motion to revoke his supervised release, charging Brown with three violations. First, during a visit to Brown's home the previous April, the officer learned that Brown was no longer living there and "had not been seen or heard from in several weeks." J.A. 14. The officer was unable to contact

Brown to discuss the violation. Next, Brown failed to participate in the drug testing program from January 2015 onward. Finally, Brown ceased making his monthly restitution payments after March 2015. In February 2016, the probation officer filed an amended motion which charged Brown with committing bank fraud and mail theft in the Northern District of Ohio, in addition to the three prior violations.

Prior to the revocation hearing, the Government gave notice that it intended to introduce hearsay evidence through a postal inspector regarding the Ohio bank fraud and mail theft violation. That hearsay evidence consisted of statements given to law enforcement and the postal inspector by four men that Brown allegedly recruited to cash stolen and altered checks. The Government asserted that three of the men were unavailable to testify because they were incarcerated in Ohio for unrelated crimes. After conducting a search, the Government failed to locate the fourth man, and the available information suggested that he was transient. Furthermore, the Government averred that, because the men giving the statements had not entered into any plea deals with the Government for their roles in the check cashing scheme, they could exercise their Fifth Amendment privilege upon questioning, although none had indicated any intention of doing so. Brown objected to the introduction of the hearsay evidence on the grounds that the statements were unreliable and the witnesses were not truly unavailable.

At the revocation hearing, Brown admitted to all violations except the bank fraud and mail theft allegations. After allowing Brown to present his arguments in opposition to the hearsay evidence and discussing the test to determine whether to admit such

3

evidence in a revocation hearing, the court ruled that it would permit the Government to present the evidence and then determine its admissibility.

The Government first called postal inspector Lauren Cajuste, who testified that she investigated several instances of fraud in Ohio, where checks were stolen from the mail and then altered to reflect new payees and sometimes new amounts. In conjunction with local law enforcement agencies, Cajuste identified four individuals who cashed the checks: Sean Cifra, Jordan Bugg, Dustin Stevens, and Charles Webb. After these witnesses were arrested, all provided materially similar statements regarding the scheme.

According to Cajuste, Brown and another man would approach a given witness in a public place, such as outside an employment assistance company, on a bridge, or at a bus stop.[1] After confirming that the witness had two forms of identification, the men would purchase clothing and a meal for the witness and then leave him for approximately an hour. Brown would return with checks in the witness' name and then drive the witness to various banks to cash those checks. The witnesses were paid by Brown and the other man between $50 and $680 for cashing the checks. Later, each witness identified Brown as one of the men after viewing a photograph lineup, with their certainty varying from 70% to 100%.[2]

Cajuste confirmed that Cifra, Bugg, and Webb were incarcerated in Ohio on unrelated charges at the time of the hearing. She was unable to find Stevens using the

---

[1] Brown did not approach Bugg, however. Instead, Webb introduced Bugg to Brown.
[2] Cifra wrote down the license plate number of the car that the two men were driving. Law enforcement officers later verified that the car with that license plate was rented by Brown during this time.

contact information that he had provided. After conducting a thorough investigation, Cajuste concluded that Stevens was transient.

Brown's probation officer then took the stand and testified that she was contacted by Ohio police and informed that Brown was a suspect in a check cashing scam. She also testified that Brown confessed he had rented the car that Cifra identified, although he claimed he rented it for a friend.

After all this evidence was presented, the district court allowed each party to again make their arguments regarding admissibility of the hearsay evidence. The court found that the hearsay evidence was reliable because each of the individuals gave substantially similar statements. The court determined that the unavailability of the witnesses was largely irrelevant, that the paramount consideration was the reliability of the evidence, although the court stated that, with three in prison and one missing, there was good cause to find the witnesses unavailable. The court therefore admitted the evidence and found that the Government had met its burden in proving the violations by Brown.

The district court stated that, pursuant to the United States Sentencing Guidelines, the bank fraud and mail theft charges constituted a Grade A violation, while the other violations were Grade C. Because Brown had a criminal history category of IV, the suggested policy statement range was twenty-four to thirty months' incarceration, with a statutory maximum of thirty-six months. Although Brown agreed that the policy statement range was correct because he was found guilty of the Grade A violation, he argued that, without the Grade A violation, he would be subject to a policy statement range of six to twelve months. In that scenario, he would have requested a sentence of

ten months.  However, because the court admitted the hearsay evidence and found him guilty of the Grade A violation, Brown requested a sentence of twenty-four months.  The Government requested the statutory maximum sentence of thirty-six months.  The court sentenced Brown to thirty months' imprisonment.  However, the court also stated that, even if it were to consider only the three Grade C violations, it would still sentence Brown to thirty months, above the policy statement range, because Brown "egregiously breached the trust of the court again."  J.A. 142–43.

Brown filed a timely notice of appeal, and the Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## II.

On appeal, Brown argues that the district court abused its discretion by relying upon hearsay statements in revoking his supervised release and sentencing him to an above-Guidelines thirty months' imprisonment.  Assuming for the sake of argument that the district court erred, however, we find any such error harmless.

## A.

We generally review a district court's decision to revoke supervised release, as well as any evidentiary rulings at the revocation hearing, for abuse of discretion.  *United States v. Padgett*, 788 F.3d 370, 373 (4th Cir. 2015) (revocation decision); *United States v. Doswell*, 670 F.3d 526, 529 (4th Cir. 2012) (evidentiary rulings).  In certain cases, however, circumstances may prompt the Court to "proceed directly to an assumed error harmlessness inquiry," in which we assume the district court erred and determine whether

6

that error was harmless. *United States v. Gomez-Jimenez*, 750 F.3d 370, 382 (4th Cir. 2014); *see also United States v. Hargrove*, 701 F.3d 156, 163 (4th Cir. 2012) ("[T]he assumed error harmlessness inquiry is an appellate tool that we utilize in appropriate circumstances to avoid the 'empty formality' of an unnecessary remand where it is clear that an asserted guideline miscalculation did not affect the ultimate sentence.").[3] That is the appropriate procedure in this case.

Federal Rule of Criminal Procedure 32.1(b)(2)(C) provides that, at a revocation hearing, the defendant "is entitled to . . . an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." A district court's failure to apply this rule correctly is a non-constitutional error. *United States v. Ferguson*, 752 F.3d 613, 618 (4th Cir. 2014). The Court determines whether a non-constitutional error is harmless by "ensur[ing] that the error had no substantial and injurious effect or influence on the outcome." *Id.* The vacation of a revocation sentence "is reserved for more serious errors that affect substantial rights or that directly affect the outcome of a case." *Id.* at 619; *see also* 28 U.S.C. § 2111 ("On the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties."); Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."). Specifically, any error related to a district court's application of the

---

[3] We have omitted internal quotation marks, alterations, and citations here and throughout this opinion, unless otherwise noted.

7

Guidelines to calculate a revocation sentence "is considered harmless if we determine that (1) the district court would have reached the same result even if it had decided the guidelines issue the other way, and (2) the sentence would be reasonable even if the guidelines issue had been decided in the defendant's favor." *Gomez-Jimenez*, 750 F.3d at 382.

The first element of the harmless error test is satisfied because the court explicitly stated that it was announcing an "alternative variant sentence." J.A. 144. Relying on *Gomez-Jimenez* and *Hargrove*, the district court announced that it would sentence Brown to thirty months' imprisonment "even if [the court] only looked at the three Grade C violations." J.A. 142; *accord* J.A. 143 ("Even if I didn't look at the criminal conduct, I would impose the same 30-month sentence because I think it is the sentence that is sufficient but not greater than necessary in this instance."). The court noted that "the other[ violations] are Grade C violations, but they're all, in my view, serious." J.A. 140; *accord* J.A. 141 (recognizing that the violations of "absconding or failing to participate in urinalysis, failure to pay monetary obligation, or engaging in criminal conduct" were "very serious, each one a very serious breach of trust, particularly for someone who has been through the process before and . . . gotten [their supervised release] revoked"). Despite Brown's argument that "[t]he vast majority of the revocation hearing focused on the alleged criminal activity" rather than the Grade C violations, Reply Br. 10, the court did focus on the circumstances surrounding the Grade A violation because they were in dispute. Since Brown admitted the Grade C violations, the court had no reason to dwell on those violations. Any disparity between the extent of the Grade A and Grade C

8

violations discussions therefore does not undercut the court's alternative variant sentence. The court "made it abundantly clear that it would have imposed the same sentence . . . regardless of the advice of the Guidelines" and explained its reasoning. *Gomez-Jimenez*, 750 F.3d at 382. We therefore move to the second element and analyze the reasonableness of the sentence. *Id.* at 386 ("Because the district court has explicitly stated that it would have imposed the same sentences regardless of the advice of the Guidelines, however, we can affirm as long as those sentences are reasonable.").

The Court "will affirm a revocation sentence if it is within the statutory maximum and is not plainly unreasonable." *United States v. Webb*, 738 F.3d 638, 640 (4th Cir. 2013). We review a revocation sentence for both procedural and substantive reasonableness. *Id.* A court commits a procedural error by "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007); *see also United States v. Bennett*, 698 F.3d 194, 200 (4th Cir. 2012) (noting that the Court follows the instructions in *Gall* when reviewing a revocation sentence). The Court will review the substantive reasonableness of the sentence by "tak[ing] into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall*, 552 U.S. at 51.

The district court has "broad discretion" in fashioning a revocation sentence and may "impose a term of imprisonment up to the statutory maximum." *United States v.*

*Crudup*, 461 F.3d 433, 439 (4th Cir. 2006). When a district court imposes a revocation sentence outside of the Guidelines range, the Court "may not apply a presumption of unreasonableness." *Gall*, 552 U.S. at 51. While the Court "may consider the extent of the deviation," we "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.*

The second element of the harmless error test is also met in this case. Assuming arguendo that the district court erred in finding Brown guilty of the bank fraud and mail theft allegations, Brown would have been subject to a Guidelines policy statement range of six to twelve months. Having received a sentence of thirty months, Brown argues that the variance is too high at two-and-a-half times the upper end and five times the lower end of his Grade C Guidelines range. The Supreme Court, however, has noted that "deviations from the Guidelines range will always appear more extreme—in percentage terms—when the range itself is low." *Id.* at 47–48. Here, the district court's thirty-month sentence was less than the thirty-six-month statutory maximum. *See* 18 U.S.C. § 3583(e)(3). We have upheld revocation sentences with similar or larger variances than the one here. *See, e.g.*, *Crudup*, 461 F.3d at 440 (affirming a thirty-six-month revocation sentence when the Guidelines suggested a sentence of five to eleven months). The variance alone, therefore, does not render Brown's sentence unreasonable.

Brown also argues that "the district court's justifications for the variance sentence do not substantively support it." Reply Br. 11. Principally, Brown contends that the court erred by focusing on his "breach of trust" because the Guidelines already account for that breach in providing a policy statement range. Indeed, the focal point of the

district court's reasoning for its sentence was Brown's breach of trust. *See, e.g.*, J.A. 140 (noting that a court is entitled to "focus on the breach of trust"); J.A. 141 (stating that each of Brown's violations were "a very serious breach of trust"); J.A. 143 (concluding that Brown "egregiously breached the trust of the court again"); J.A. 144 (ultimately sentencing Brown to thirty months' imprisonment "for the egregious breach of trust"). The Guidelines state, however, that "at revocation the court should sanction *primarily the defendant's breach of trust*, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator." *See* U.S. Sentencing Guidelines Manual ch. 7, pt. A.3(b) (emphasis added). We have previously held that an "egregious breach of trust[ is] a perfectly appropriate basis—and, in fact, the principal basis on which the Guidelines encourage courts to ground revocation sentences." *Bennett*, 698 F.3d at 202. As in *Bennett*, "[o]ur review of the hearing transcript makes clear that it was the brazen breach of trust inherent in [Brown's violations] while on supervised release . . . that drove the district court's sentencing decision." *Id.* at 200. The district court therefore properly considered Brown's breach of trust in crafting his sentence. Accordingly, the sentence is both procedurally and substantively reasonable.[4]

---

[4] As the Government notes, we have held in an unpublished per curiam opinion that the "admission of hearsay evidence for sentencing purposes is not improper," distinguishing this from the "admission of the hearsay evidence for the purposes of assessing whether [the defendant] committed the charged violations." *United States v. Grier*, 411 F. App'x 614, 616 (4th Cir. 2011). In fact, some of our sister courts have found that "[a] revocation defendant's due process right to confrontation does not apply in connection with the *length* of any resulting prison sentence." *United States v. Williams*, 847 F.3d 251, 254 (5th Cir. 2017) (emphasis added); *accord United States v. Ruby*, 706 F.3d 1221, 1227–28 (10th Cir. 2013). Because we find the sentence satisfies assumed error harmlessness review, however, we need not address the Government's argument.

## III.

For these reasons, the judgment of the district court is

*AFFIRMED*.