PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.                                             No. 11-4190

ANTHONY CURTIS DOSWELL,
          *Defendant-Appellant.*

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William M. Nickerson, Senior District Judge.
(1:93-cr-00483-WMN-2)

Argued: January 24, 2012

Decided: March 2, 2012

Before NIEMEYER, MOTZ, and KING, Circuit Judges.

Vacated and remanded by published opinion. Judge Motz
wrote the opinion, in which Judge Niemeyer and Judge King
joined.

## COUNSEL

**ARGUED:** Joanna Beth Silver, OFFICE OF THE FEDERAL
PUBLIC DEFENDER, Baltimore, Maryland, for Appellant.
Paul Nitze, OFFICE OF THE UNITED STATES ATTOR-
NEY, Greenbelt, Maryland, for Appellee. **ON BRIEF:** James

Wyda, Federal Public Defender, Baltimore, Maryland, for Appellant. Rod J. Rosenstein, United States Attorney, Robert R. Harding, Assistant United States Attorney, Michael Schelpp, Law Student Intern, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

---

## OPINION

DIANA GRIBBON MOTZ, Circuit Judge:

Anthony Doswell appeals the judgment of the district court revoking his term of supervised release and sentencing him to twenty–four months of incarceration. Because the court failed to comply with Federal Rule of Criminal Procedure 32.1(b)(2)(C) when it admitted and relied on hearsay evidence at Doswell's revocation hearing, we vacate and remand for further proceedings consistent with this opinion.

I.

In July 1994, Doswell was convicted of robbery and sentenced to 210 months of incarceration, followed by a three year term of supervised release. His supervised release began on May 11, 2009.

On August 26, 2010, Doswell's probation officer filed a Notice of Violation ("Original Notice") alleging six violations of the conditions of Doswell's supervised release. Specifically, the Original Notice asserts that, while on release, Doswell (1) failed to attend mental health treatment appointments on multiple occasions; (2) absconded from supervision and failed to provide his probation officer with his current whereabouts; (3) failed to submit two required written monthly reports; (4) failed to report a marijuana arrest to his probation officer; (5) provided a urine sample that tested positive for heroin; and (6) had been charged with possession of marijuana.

Three months later, on November 15, 2010, the probation officer filed a "Notice of Violation to Supplement the 8/26/2010 Petition" ("Supplemental Notice"), which alleges an additional violation of the conditions of Doswell's supervised release. The Supplemental Notice asserts that, on October 26, 2010, Doswell was charged with "Attempted CDS Distribution of Narcotics and CDS Possession Not Marijuana," *i.e.*, attempted distribution and possession of heroin.

Doswell's revocation hearing occurred on January 11, 2011. At the outset of the hearing, the district court asked whether Doswell admitted any of the alleged violations. Doswell's counsel stated that Doswell admitted that he had been convicted of possession of marijuana as set forth in the Original Notice. Defense counsel explained that the parties disagreed as to whether this marijuana violation constituted a Grade A violation, which would require revocation of Doswell's supervised release, or only a Grade C violation, which would not. *See* U. S. Sentencing Guidelines Manual § 7B1.3(a).

Before the district court could resolve the parties' dispute on this point, the Government stated that Doswell had committed another offense that independently required revocation of Doswell's supervised release—the heroin violation alleged in the Supplemental Notice. The Government acknowledged that the heroin charge had been *nolle prossed* in state court because the chemist, who authored the drug analysis report stating that the seized capsules contained heroin, failed to appear in court on two occasions. Nevertheless, the Government asserted that the *nolle prossed* heroin charge mandated revocation of Doswell's supervised release. The Government offered two pieces of evidence to support the contention that the heroin violation had in fact occurred: (1) the statement of probable cause sworn by the police officer who arrested Doswell; and (2) the drug analysis report itself.

Doswell's counsel immediately responded that he and his client had not received the Supplemental Notice. The district

court then allowed defense counsel the opportunity to examine the Supplemental Notice and discuss the additional charge with Doswell. After conferring with Doswell, defense counsel reported to the court that Doswell did "dispute th[e] [heroin] violation." Counsel pointed out that, as the prosecutor had conceded, the heroin "case was actually dismissed" and noted that there was "a dispute . . . as to what the underlying substance was." Doswell's counsel contended that the substance in the capsules seized from Doswell was actually pain medication and "object[ed] to th[e] Court considering the drug [analysis] report without further testimony to support what the substance is." Defense counsel explained that the defense "certainly would want to be able to investigate and show that potentially that the drug report is incorrect, . . . which could be clarified through the witness who didn't show up on two occasions in state court to establish what, in fact, the substance was and whether it was something that [Doswell] could legally possess pursuant to a prescription." Counsel emphasized that the state court had found the drug analysis report "insufficient to sustain a conviction."

Without explanation, the district court concluded that, "notwithstanding the objection," the drug analysis report was "sufficient to support the [heroin] violation alleged." Accordingly, the court found Doswell guilty of the heroin violation set forth in Supplemental Notice, a violation that the court concluded, "in itself, [wa]s sufficient for . . . a mandatory revocation [of Doswell's supervised release]." The court then sentenced Doswell to the statutory maximum, twenty-four months of imprisonment.

Doswell noted a timely appeal.

## II.

We resolve at the outset certain preliminary matters.

Doswell argues that his rights under Federal Rule of Criminal Procedure 32.1(b)(2) and the Fifth Amendment were vio-

lated in two respects. First, Doswell challenges the failure to provide him notice of the alleged heroin offense in advance of his revocation hearing. Second, he challenges the district court's reliance on the Government's hearsay evidence to find that he had violated the conditions of his supervised release.

We need not reach Doswell's first argument—the notice contention—because we agree with him that the district court's error in failing adequately to assess the hearsay evidence requires a remand. Clearly, he now has notice of the alleged heroin violation and so has adequate time to prepare a defense to it on remand.

Moreover, with regard to Doswell's second contention—improper admission of hearsay—because we conclude that the district court failed to comply with Federal Rule of Criminal Procedure 32.1(b)(2)(C) when admitting hearsay evidence at the revocation hearing, we do not reach Doswell's constitutional argument. *See Norfolk S. Ry Co. v. City of Alexandria*, 608 F.3d 150, 156-57 (4th Cir. 2010) (noting that the "principle of constitutional avoidance . . . . requires the federal courts to strive to avoid rendering constitutional rulings unless absolutely necessary").

The final preliminary matter is determination of the proper standard of review with respect to the contention we do address—admission of hearsay evidence at a supervised release revocation hearing. We ordinarily review a district court's decision to admit evidence for abuse of discretion. *United States v. Medford*, 661 F.3d 746, 751 (4th Cir. 2011). That same standard applies to a district court's admission of hearsay evidence under Federal Rule of Criminal Procedure 32.1(b)(2)(C). *See United States v. Williams*, 443 F.3d 35, 46 (2d Cir. 2006). Nevertheless, the Government maintains that, in this case, we should review for plain error. The Government maintains that Doswell did not object to the admission of the hearsay evidence with sufficient specificity to preserve

his argument on appeal that the district court erred in admitting the hearsay evidence.

We must reject this argument. Counsel did not need to invoke Rule 32.1(b)(2)(C) by name in order to preserve the claim on appeal, as long as the objection was "sufficiently specific to bring into focus the precise nature of the alleged error." *Duty v. East Coast Tender Service, Inc.*, 660 F.2d 933, 941 (4th Cir. 1981). Here, defense counsel clearly and forcefully objected to the admission of the hearsay drug analysis report based, at least in part, on the inability to question the author of the report. *See* Fed. R. Crim. P. 32.1(b)(2)(C) (providing that a releasee "is entitled to . . . question any adverse witness . . ."). That certainly sufficed to preserve the argument for appellate review.

With these preliminary matters established, we turn to the asserted Rule 32.1 violation.

## III.

Supervised release revocation hearings are informal proceedings in which the rules of evidence, including those pertaining to hearsay, need not be strictly applied. Fed. R. Evid. 1101(d)(3); *United States v. McCallum*, 677 F.2d 1024, 1026 (4th Cir. 1982). The Supreme Court, however, has held that a person facing revocation of release possesses a due process "right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972); *see also Gagnon v. Scarpelli*, 411 U.S. 778, 781-82 (1973).

Rule 32.1 sets forth the parameters of this limited right. In its original form, Rule 32.1 provided only the general instruction that a releasee subject to revocation proceedings "shall be given . . . the opportunity to question witnesses against him." Fed. R. Crim. P. 32.1(a)(2)(D) (1980). Based on this version

of Rule 32.1, we held in 1982 that hearsay was admissible at a revocation hearing if it was "demonstrably reliable." *McCallum*, 677 F.2d at 1026.

Twenty years later, in 2002, Rule 32.1 was substantially amended to provide that a releasee subject to revocation proceedings "*is entitled* to . . . question any adverse witness *unless the court determines that the interest of justice does not require the witness to appear.*" Fed. R. Crim. P. 32.1(b)(2)(C) (emphases added). The Advisory Committee explained that this amendment "recognize[s] that the court should apply a balancing test at the hearing itself when considering the releasee's asserted right to cross-examine adverse witnesses." Fed. R. Crim. P. 32.1 advisory committee's note (2002). Specifically, "[t]he court *is* to balance the person's interest in the constitutionally guaranteed right to confrontation against the government's good cause for denying it." *Id.* (emphasis added).

Despite the clear language of Rule 32.1, as revised in 2002, the Government argues that we should maintain the *McCallum* reliability test for the admission of hearsay at revocation hearings. We decline to do so. We believe that the language of Rule 32.1(b)(2)(C), not *McCallum*, which interpreted an outdated version of that rule, controls. Rule 32.1(b)(2)(C) specifically requires that, prior to admitting hearsay evidence in a revocation hearing, the district court must balance the releasee's interest in confronting an adverse witness against any proffered good cause for denying such confrontation. Our holding that Rule 32.1(b)(2)(C) requires a balancing of interests accords with that of many of our sister circuits that have addressed the question. *See, e.g.*, *United States v. Lloyd*, 566 F.3d 341, 344-45 (3d Cir. 2009); *United States v. Williams*, 443 F.3d 35, 46 (2d Cir. 2006); *United States v. Martin*, 382 F.3d 840, 844-45 (8th Cir. 2004); *United States v. Taveras*, 380 F.3d 532, 536-38 (1st Cir. 2004).[1]

---

[1]Some circuits have held that *Morrissey* itself requires a balancing test. *See, e.g.*, *United States v. Minnitt*, 617 F.3d 327, 332-33 (5th Cir. 2010);

We note, however, that our holding does not signal a dramatic shift in legal analysis. Reliability is a critical factor in the balancing test under Rule 32.1. *Cf. Curtis v. Chester*, 626 F.3d 540, 546 (10th Cir. 2010) (noting that "all circuit courts agree reliability is a very important factor in determining the strength of a releasee's confrontation right") (emphasis omitted). If hearsay evidence is reliable and the Government has offered a satisfactory explanation for not producing the adverse witness, the hearsay evidence will likely be admissible under Rule 32.1. On the other hand, hearsay evidence of questionable reliability will of course provide a far less firm basis for denying a releasee the opportunity to "question any adverse witness." Fed. R. Crim. P. 32.1(b)(2)(C).

In this case, the chemist who authored the drug analysis report failed to appear in state court on two occasions to verify the reliability of the report, requiring dismissal of the heroin charge in state court. Even so, and notwithstanding the Supreme Court's recognition of the potential unreliability of drug analysis reports, *see Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527, 2537 (2009), the Government did not provide testimony from the chemist at the revocation hearing. Nor did the Government put forward any explanation for its failure to do so or offer any other evidence that Doswell had committed a violation involving heroin.[2] Yet the district court admitted the drug analysis report without any reliability finding or any attempt to engage in the balancing test required by Rule 32.1. In doing so, the court abused its discretion. *United States v. Delfino*, 510 F.3d 468, 470 (4th Cir. 2007) ("A district court abuses its discretion when it . . . fails to consider judicially

---

*United States v. Hall*, 419 F.3d 980, 986 (9th Cir. 2005). *But see, e.g.*, *United States v. Kelley*, 446 F.3d 688, 692 (7th Cir. 2006); *Crawford v. Jackson*, 323 F.3d 123, 131 (D.C. Cir. 2003).

[2]The Government did offer the arresting officer's statement of probable cause as evidence. That statement, however, provides no evidence of the chemical nature of the substance seized from Doswell or the manner in which Doswell described the substance to the alleged purchaser.

recognized factors constraining its exercise of discretion
. . . .").

This abuse of discretion does not, as the Government sug-
gests, constitute harmless error. The Government maintains
that any error was harmless because the district court could
have revoked Doswell's supervised release on the basis of his
conceded marijuana violation and then considered the drug
analysis report in determining a sentence. Perhaps so, but in
fact the district court did not base its revocation order on this
theory. Rather, the court clearly regarded the heroin violation
as its sole basis for revoking Doswell's supervised release. As
the court explained: "My conclusion is that Mr. Doswell is
guilty of that [heroin] violation which, *in itself*, is sufficient
for the conclusion reached by [the probation officer] on the
work sheet and sufficient for a mandatory revocation."
(emphasis added).[3]

## IV.

For the reasons set forth above, the district court's judg-
ment revoking Doswell's supervised release is vacated and
this case is remanded for further proceedings.

*VACATED AND REMANDED*

---

[3]The Government notes that the district court issued a subsequent writ-
ten judgment finding Doswell guilty of additional alleged violations,
including the marijuana violation. But the oral pronouncement of sentence
controls. *See, e.g.*, *United States v. Osborne*, 345 F.3d 281, 283 n.1 (4th
Cir. 2003); *United States v. Handakas*, 329 F.3d 115, 117 (2d Cir. 2003).