COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Decker, Malveaux and Senior Judge Clements
Argued at Richmond, Virginia


HAROLD BENJAMIN, A/K/A
 DARRELL BERNARD STEWART, A/K/A
 BENJAMIN HAROLD

                                                    MEMORANDUM OPINION* BY
v.      Record No. 0920-16-2                        JUDGE MARLA GRAFF DECKER
                                                    DECEMBER 19, 2017

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Clarence N. Jenkins, Jr., Judge

Lauren Whitley, Deputy Public Defender, for appellant.

David M. Uberman, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Harold Benjamin appeals a ruling of the circuit court revoking his suspended sentences for

grand larceny, attempted grand larceny, and statutory burglary when he was charged with numerous

new theft-related crimes. On appeal, he alleges that the circuit court erred by admitting testimonial

hearsay in his revocation hearing in violation of his due process right of confrontation. We hold that

to the extent that the appellant preserved his due process challenge to certain categories of evidence

for appeal, no reversible error occurred. Accordingly, we affirm the revocation of the suspension of

his sentences.

I. BACKGROUND

In 2005 and 2008, the appellant was convicted of three offenses: grand larceny,

attempted grand larceny, and statutory burglary. He was sentenced to serve a total of twenty

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

years in prison, with sixteen years suspended on various conditions including good behavior. In 2015, the circuit court issued an order requiring the appellant to show cause why his suspended sentences should not be revoked as a result of numerous new charges and convictions for trespassing and larceny.[1]

On February 18, 2016, the appellant appeared for a trial on the new charges and a revocation hearing on his previously suspended sentences. The prosecutor made a motion to dispose of two felony petit larceny charges by *nolle prosequi*, explaining that a key witness was not present. The circuit court granted the motion over the appellant's objection.

The court then heard evidence on the remaining charges, which related to a series of thefts from August 2014 to February 2015 in various state buildings in the Capitol area of downtown Richmond. Some of the buildings at issue housed parts of Virginia Commonwealth University (VCU), including its School of Medicine, as well as the Virginia Department of Transportation (VDOT). With the exception of the two petit larceny charges that were dismissed by *nolle prosequi*, the circuit court acquitted the appellant of the new offenses. It did so in part based on its finding that photographs that the Commonwealth produced from the surveillance videos relating to the offenses were of extremely poor quality. It also rejected the testimony of a witness who reported purchasing electronics items from the appellant that were later determined to have been stolen. The court continued the revocation portion of the proceeding.

At the revocation hearing on May 20, 2016, the court adopted the trial evidence.[2] The Commonwealth also introduced two convictions for trespassing on VCU property on August 21

---

[1] The circuit court permitted an amendment of the order to add two convictions.

[2] At the trial on February 18, 2016, the court noted that it and counsel were "in agreement" to "adopt the evidence" from the trial for purposes of the revocation hearing. The court also indicated that the parties would be permitted to introduce additional evidence at the revocation proceeding. At the revocation proceeding, the Commonwealth expressly asked the court "to adopt the trial evidence."

and November 24, 2014, both of which were rendered prior to the 2015 revocation show cause order. Additionally, it presented evidence on the two felony petit larceny charges previously dismissed by *nolle prosequi*. The evidence included the testimony of the victims of the petit larcenies, Lidia Peck and Cherisha Rowlette, two colleagues at VDOT. Their cellular telephones were stolen from their nearby cubicles while they were away from their desks at lunchtime.

Special Agent J.L. Cosby of the Virginia Capitol Police testified about obtaining telephone records related to the thefts and examining surveillance video from the VDOT building where the thefts occurred. Through Cosby's testimony, the prosecutor admitted five photographs of what appeared to be the same individual in various locations inside and outside the VDOT building between 11:44 and 11:58 a.m. on the day of the cell phone thefts. Cosby testified that four of the photos appeared to depict the same man, who was wearing a long-sleeved white top, dark pants, and dark shoes, and was carrying a black backpack. The fifth photo depicted "a secured little room" where the victims worked and showed just the top of the bald head of a person of the same race as the man in the other photographs.

Sergeant Anthony Gulotta, also of the Virginia Capitol Police, testified about his work with Special Agent Cosby on the investigation. Gulotta said that he talked with the appellant's brother and examined other surveillance video in the course of identifying the appellant as a suspect. Gulotta further explained that he obtained a photograph purporting to be a Harold Benjamin from the public website Facebook. The photo, which was admitted into evidence, showed the appellant in a white sweater and dark pants.

During the Commonwealth's case-in-chief, the appellant made numerous objections based on due process, the right of confrontation, and the rule against hearsay. The circuit court overruled the objections and found that the appellant violated his probation. In doing so, it noted that it "vividly remember[ed] the allegations" from the trial, stating that although the photos

presented at that time were not clear enough to show facial features, the person in those previous photographs bore "very strong similarities" to the better quality photographs offered into evidence in the revocation proceeding. It also referred to the Facebook photograph of the appellant and observed that the sweater and shoes the appellant was wearing in that photograph were very similar to those worn by the individual in the surveillance photographs of the VDOT building on the day of the thefts. Additionally, the court explicitly referenced evidence of phone calls made from one of the stolen phones to the appellant's brother and sister-in-law in the hours after the thefts. Further, it noted that all the incidents "took place . . . along the VCU [and VDOT] corridor." Finally, the court observed that the appellant's new trespass convictions also occurred on VCU property.

In sentencing the appellant, the court revoked the sixteen years remaining on his sentences and resuspended twelve years, giving him an additional active sentence of four years.

## II. ANALYSIS

The appellant argues that the circuit court's admission of testimonial hearsay evidence at the revocation hearing violated his due process right of confrontation. He also suggests that the court "consistently ruled all hearsay was admissible and never engaged in the . . . tests" required by controlling case law. He further contends that the record is insufficient to permit this Court to conduct its own good cause analysis. He challenges two categories of evidence on brief: (1) data gleaned from telephone records and (2) information that Sergeant Gulotta obtained from the appellant's brother.

### A. Standard of Review and Due Process Right of Confrontation

An appellate court reviews evidence admitted in a revocation hearing "in the light most favorable to the Commonwealth, as the prevailing party, including all reasonable and legitimate inferences that may properly be drawn from it." Henderson v. Commonwealth, 285 Va. 318,

329, 736 S.E.2d 901, 907 (2013). A finding that a defendant has violated the conditions of his probation or suspended sentence is reviewed for an abuse of discretion. See, e.g., Whitehead v. Commonwealth, 278 Va. 105, 116, 677 S.E.2d 265, 271 (2009). A determination regarding the relevance and admissibility of evidence in a revocation proceeding is ordinarily also reviewed under such a standard. Henderson, 285 Va. at 329, 736 S.E.2d at 907. However, whether a defendant's due process rights have been violated by the admission of evidence is a question of law that is reviewed *de novo*. Id.

The defendant in a revocation proceeding "is not entitled to the 'full panoply' of constitutional rights to which he was entitled at trial" because the proceeding "occur[s] after a criminal prosecution has ended in a conviction." Id. at 325, 736 S.E.2d at 905 (quoting Morrissey v. Brewer, 408 U.S. 471, 480 (1972)). The rules of evidence are not "'strictly applied,'" and "[h]earsay is frequently admitted in revocation proceedings." Id. at 326, 736 S.E.2d at 905 (quoting United States v. Doswell, 670 F.3d 526, 530 (4th Cir. 2012)); see id. (recognizing the routine admission of "letters, affidavits, and other material"). Only if the hearsay is testimonial in nature is its admission subject to challenge in a revocation proceeding. See id. Additionally, the basis for this challenge in a state revocation hearing is not the Confrontation Clause of the Sixth Amendment to the United States Constitution but, rather, a more limited right of confrontation under the Due Process Clause of the Fourteenth Amendment. See id. at 325-26, 736 S.E.2d at 905; Saunders v. Commonwealth, 62 Va. App. 793, 807-08, 753 S.E.2d 602, 609 (2014).

Case law interpreting this due process right provides that testimonial hearsay is admissible in a revocation proceeding when the judge "specifically finds good cause for not allowing confrontation." Henderson, 285 Va. at 326, 736 S.E.2d at 905 (quoting Morrissey, 408 U.S. at 489). The Supreme Court of Virginia has expressly held that when a circuit court

- 5 -

"dispens[es] with the due process right of confrontation, [it] should state for the record the specific grounds upon which [it] has relied for 'not allowing confrontation' in order to facilitate effective appellate review of that decision." Id. at 326-27, 736 S.E.2d at 906 (quoting Morrissey, 408 U.S. at 489); see Cox v. Commonwealth, 65 Va. App. 506, 513, 520, 779 S.E.2d 199, 202, 205-06 (2015). However, the Court has also observed that a defendant may waive the right to have the circuit court make explicit "good cause" findings by failing to ask it to do so. Henderson, 285 Va. at 327, 736 S.E.2d at 906.

The Supreme Court has further held that if a good cause finding was not specifically requested, "one may infer that the circuit court made such a finding . . . simply from the fact that [a defendant's] objections on hearsay and confrontation grounds were overruled." Id. at 326, 736 S.E.2d at 905. When the circuit court does not make express findings, the appellate court will conduct "an independent review of the record to ascertain whether . . . sufficient credible evidence [was] before that court to support a finding of 'good cause.'" Id. at 327, 736 S.E.2d at 906 (quoting Morrissey, 408 U.S. at 489); see Cox, 65 Va. App. at 519-20, 779 S.E.2d at 205. If the record does not establish good cause, reversal and remand are required unless the erroneous admission of the testimonial hearsay evidence was harmless. See Cox, 65 Va. App. at 520-21, 779 S.E.2d at 205-06.

Here, in objecting on due process grounds, the appellant did not mention the good cause requirement or ask the court to make findings with respect to that requirement. Consequently, to the extent that the appellant's claims are preserved, this Court examines the record to ascertain whether it supports findings of good cause to admit the various categories of evidence without confrontation.

B.  Admissibility of Telephone Records

The appellant challenges the admissibility of telephone records and some of the data obtained from them.  We hold that he has failed to establish reversible error with regard to these records.

Rowlette testified that she checked her nTelos account online the evening after her phone disappeared and saw that a call had been made to a telephone number that she did not recognize.  The appellant objected to her testimony on "foundation" and "hearsay grounds."  The prosecutor responded that a different standard applied in a revocation hearing than at trial.  The court agreed and overruled the objection.

Special Agent Cosby related that he investigated the thefts of the phones belonging to Peck and Rowlette.  The day after the thefts occurred, Rowlette sent him a printout of her online phone records showing a single call placed from her phone to a number she did not recognize.  Cosby testified that using "an open source tool" available to the Capitol Police, he learned that the number dialed belonged to "a Ms. [Burwell]."  The appellant objected expressly on hearsay grounds, stating that even in a show cause proceeding, the Commonwealth was required to establish "a threshold account of reliability."  The court rejected the hearsay objection, stating that it would "give [the prosecutor] some leeway" to establish reliability.  The prosecutor then elicited testimony that Cosby used a search warrant to obtain written records from nTelos for Rowlette's phone.  Special Agent Cosby examined the nTelos records for the date of the theft and found the number that Rowlette had earlier provided as the number she did not recognize.  The records indicated that this number had been called from Rowlette's phone twice in the hours after the theft.  The appellant then renewed his objection and inquired whether the records would be introduced into evidence.  When the prosecutor confirmed that he planned to introduce them,

the appellant "add[ed] . . . confrontation clause and due process" objections. The court again overruled the objections and admitted the nTelos records into evidence.

The prosecutor also elicited additional testimony from Cosby about a subpoena issued to Verizon for records for the "land line" telephone number dialed from Rowlette's phone. Cosby testified that Verizon provided information indicating that the subscriber of the telephone number was "Customer name Annette . . . Benjamin, listing name Annette [Burwell]." The Commonwealth then made a motion to admit the document. The appellant objected "on hearsay, confrontation clause and due process" grounds. The circuit court admitted the exhibit.

This record supports the conclusion that the appellant waived his right to challenge the admission of some of this evidence on due process grounds and that the admission of other portions of the evidence, if error, was harmless. The appellant objected only on unrelated grounds or objected too late, after testimony about the evidence had already been admitted, rendering any erroneous admission of the cumulative evidence harmless.

Under settled principles, a mere hearsay objection does not alert the court to an objection on constitutional confrontation grounds, regardless of whether that right arises under the Confrontation Clause of the Sixth Amendment or the Due Process Clause of the Fourteenth Amendment. See Riner v. Commonwealth, 268 Va. 296, 325 n.11, 601 S.E.2d 555, 571 n.11 (2004) (Sixth Amendment Confrontation Clause).

Here, the appellant failed to preserve for appeal a due process objection to the testimony of Rowlette. When Rowlette testified that she checked her nTelos phone records online and learned that someone had made an outgoing call from her phone after the theft to a number that she did not recognize, the appellant objected only on foundation and hearsay grounds. Thus, he waived his right to contest the admission of this testimony on due process grounds. See id.

The appellant similarly failed to preserve for appeal a due process objection to the related testimony given by Special Agent Cosby. The appellant objected only on hearsay grounds to Cosby's testimony that he used a police "tool" to check the telephone number that the online records indicated was called from Rowlette's phone and that the number "came back to a Ms. [Burwell]." Again, because the appellant objected only on hearsay grounds, he waived any objection on due process grounds. See id.

The appellant also did not adequately preserve for appeal any objection to Special Agent Cosby's testimony regarding the information in the records that he obtained from nTelos by subpoena. Cosby testified without objection that the documents showed two phone calls from Rowlette's number in the hours after the theft. Only after Cosby had given this testimony did the appellant object, stating, "I'm just going to renew my objection at this point," referring, presumably, to his prior hearsay objections. Once again, such an objection was insufficient to present a due process challenge. See id. The appellant then stated, "I don't know if the Court[is] planning on introducing these *records* --." (Emphasis added). When the prosecutor confirmed that he was planning to introduce them, the appellant "add[ed]" confrontation clause and due process grounds, clearly limiting his due process objection to the admission of the records. He did not indicate that he was objecting on confrontation or due process grounds to the testimony that Special Agent Cosby had already given. Consequently, the nTelos documents were cumulative of Cosby's testimony, and any error in admitting them was harmless. See, e.g., Dearing v. Commonwealth, 260 Va. 671, 673-74, 536 S.E.2d 903, 904 (2000).

Finally, the appellant did not adequately preserve for appeal any objection to Special Agent Cosby's testimony regarding the information in the Verizon records. Once again, the appellant objected only when the prosecutor asked the court to admit the Verizon document into

- 9 -

evidence. The appellant did not register an objection to Cosby's related testimony.[3]

Accordingly, the Verizon document was merely cumulative of Cosby's testimony, and any error in admitting it was harmless. See id.

In short, the appellant has failed to establish any reversible error with regard to the admission of evidence of the nTelos and Verizon telephone records.

### C. Admissibility of Ronald Benjamin's Statements to Sergeant Gulotta

The remaining evidence involves the appellant's challenge to the admissibility of testimony about Sergeant Gulotta's conversation with the appellant's brother, Ronald Benjamin. The evidence that the appellant challenges consists of Ronald's "identification of Harold Benjamin"; Ronald's confirmation "that the outgoing phone call from the stolen phone was made to his phone number"; and Ronald's statements identifying Annette Benjamin as his wife and the appellant as his brother.

At trial, Sergeant Gulotta explained his involvement in investigating the series of Capitol area larcenies in 2014 and 2015. Gulotta testified that in December 2014, he investigated a theft that occurred that month from a different building than the one in which Rowlette and Peck worked. In the course of that investigation, he reviewed the building's sign-in sheets and surveillance video for the relevant time period. He identified "someone of interest," whom he described as a male of a particular race, "approximately[] 6 feet tall, heavy build." Based on the

---

[3] Moreover, even if the appellant's due process objections encompassed not only the nTelos and Verizon records but also Cosby's testimony about their contents, the appellant did not move to strike Cosby's testimony. See M.G. v. Albemarle Cty. Dep't of Soc. Servs., 41 Va. App. 170, 189 n.10, 583 S.E.2d 761, 770 n.10 (2003) (noting that when a litigant objects but does not "move to strike . . . testimony already given," that testimony is "part of the record for purposes of appeal" (citing Kent Sinclair, Joseph C. Kearfoot, Paul F. Sheridan & Edward J. Imwinkelried, Virginia Evidentiary Foundations § 2.4[A], at 20 (1998); 1 John W. Cooley, Callaghan's Appellate Advocacy Manual: Lawyer's Edition § 3.09, at 29 (1993))). Accordingly, that testimony is part of the record for purposes of appeal, further supporting the conclusion that admission of the phone records was harmless.

names on the sign-in sheets, Gulotta concluded that the man signed in as "Ronald Benjamin."

Using a "police database," Gulotta "look[ed] up Ronald Benjamin." When the prosecutor asked

him if he "[found] out who that individual was or anything about him," Gulotta responded

affirmatively. The appellant objected based on foundation, hearsay, confrontation, and due

process grounds. The court overruled the appellant's objection. The prosecutor inquired

whether Gulotta found out where Ronald Benjamin worked, and he responded, "At the time, no."

Gulotta then testified, without objection, that he "was told" that a man named *Harold*

Benjamin, the name of the appellant, worked for a particular company in Sandston. Based on

that information, Sergeant Gulotta visited the business within a month of the December 2014

theft he was investigating. There, he met with employee *Ronald* Benjamin. Gulotta was not

asked precisely how he came to meet with Ronald rather than Harold Benjamin. Gulotta further

testified that although he originally considered Ronald Benjamin a suspect because his name

appeared in the sign-in log, he immediately concluded upon meeting Ronald Benjamin that

Ronald "[a]bsolutely [did] not" match the person Gulotta saw in the surveillance videos who had

signed in using that name.

When the prosecutor inquired whether Gulotta asked Ronald Benjamin if he knew Harold

Benjamin or if Ronald told him "about another person," the appellant objected on hearsay,

confrontation, and due process grounds. The prosecutor and the judge agreed that the

information was hearsay, but the prosecutor again noted that the hearing was "a show cause

proceeding," and the court overruled the objection. Gulotta then stated that Ronald Benjamin

"gave [him] the name of *Harold Benjamin*."

Gulotta testified that he subsequently located and printed a Facebook photograph

purporting to be a Harold Benjamin. Gulotta further indicated that he located the same man

"[t]hrough the video cameras . . . that were at VDOT, various places." He also confirmed that the appellant was the person in the Facebook photo.

When the prosecutor asked Gulotta if he spoke to Ronald Benjamin "about this telephone number" and "who his wife was," the appellant made his most detailed confrontation clause objection, arguing that "[i]n addition to hearsay, due process . . . require[s] . . . confrontation . . . in show cause proceedings and . . . an officer asking a suspect information about [the appellant as] part of the criminal investigation would impl[icate] the confrontation clause." The prosecutor responded that the appellant's "counsel [could] test the reliability on [c]ross-examination when it's being offered from a police officer." The judge overruled the objection. The prosecutor then elicited testimony from Sergeant Gulotta that Ronald Benjamin confirmed that "Annette Benjamin [was] his wife," that an unspecified "phone number was . . . his phone number," and that Harold Benjamin "was his brother."

### 1. Testimonial Hearsay

As stated *supra* in Part II.A., due process principles provide that a defendant in a revocation proceeding may successfully object to the admission of hearsay that is testimonial unless "sufficient credible evidence . . . support[s] a finding of 'good cause for not allowing confrontation'" of the declarant. Henderson, 285 Va. at 326-27, 736 S.E.2d at 905-06 (quoting Morrissey, 408 U.S. at 489); see Cox, 65 Va. App. at 519-20, 779 S.E.2d at 205. A hearsay statement is testimonial when it results from an "interrogation" the "primary purpose" of which "is to establish or prove past events potentially relevant to later criminal prosecution." Davis v. Washington, 547 U.S. 813, 822 (2006); see id. (categorizing hearsay statements made "to enable police assistance to meet an ongoing emergency" as non-testimonial). Here, the record establishes that Sergeant Gulotta spoke with Ronald Benjamin while investigating a series of Capitol area larcenies. Accordingly, Ronald Benjamin's challenged statements to Gulotta

- 12 -

qualify as testimonial hearsay. As such, they were inadmissible unless the record establishes good cause for not requiring that the appellant be allowed to confront Ronald Benjamin about them. See Henderson, 285 Va. at 327, 736 S.E.2d at 906.

### 2. Good Cause for Admitting Testimonial Hearsay Without Confrontation

The Supreme Court of Virginia recognizes two tests for evaluating whether good cause exists to admit testimonial hearsay without confrontation in a revocation proceeding, the reliability test and the balancing test. See id. at 327-28, 736 S.E.2d at 906. Either test may be used by the court in its discretion. Id. at 328, 736 S.E.2d at 907. The reliability test permits the admission of testimonial hearsay in revocation proceedings if it possesses "substantial guarantees of trustworthiness." Id. at 327, 736 S.E.2d at 906. The Supreme Court recognizes a variety of categories of substantially trustworthy information. Id. Those categories include "detailed police reports (as opposed to mere summaries of such reports by probation officers)," "corroboration of accusers' hearsay by third parties or physical evidence," and a defendant's "failure to offer contradictory evidence." Id. Evidence that "alone" would not be sufficiently trustworthy includes "bare out-of-court statements reflecting an adversarial relationship with the accused or statements contained within multiple layers of hearsay." Id. The balancing test "requires the court to weigh the interests of the defendant in cross-examining his accusers against the interests of the prosecution in denying confrontation." Id. at 327-28, 736 S.E.2d at 906.

### 3. Application of Good Cause Principles

The appellant challenges Ronald Benjamin's "identification of Harold Benjamin"; Ronald's confirmation "that the outgoing phone call from the stolen phone was made to his phone number"; and Ronald's statements identifying Annette Benjamin as his wife and the appellant as his brother. We hold that the appellant misunderstands the nature of the first two statements and that good cause existed for not requiring that the appellant be allowed to confront

Ronald Benjamin about the final challenged category of statements, regarding family relationships.

The appellant first characterizes Sergeant Gulotta's meeting with Ronald Benjamin as "identif[ying] Mr. Harold Benjamin to Sergeant Gulotta." However, a careful reading of the record, viewed in the light most favorable to the Commonwealth, reflects that Gulotta knew the name Harold Benjamin before he ever met Ronald Benjamin and that his first encounter with Ronald Benjamin was accidental. See id. at 329, 736 S.E.2d at 907. Gulotta testified that he obtained the name *Ronald* Benjamin from watching video surveillance recordings and reviewing the sign-in sheets from one of the buildings in which a December 2014 theft had occurred. He further explained that he went to the business in Sandston because he "was told" that a *Harold* Benjamin worked there.[4] Once he arrived at the lumber company, he met *Ronald* Benjamin. Therefore, the record makes clear that Sergeant Gulotta already knew of Harold Benjamin's existence before he met Ronald Benjamin. Ronald Benjamin did not "identif[y]" Harold Benjamin to Sergeant Gulotta, and the record contains no factual basis for this challenge.

The appellant argues second that Sergeant Gulotta testified that Ronald Benjamin told him "that the outgoing phone call from [Rowlette's] stolen phone was made to [Ronald Benjamin's] phone number." Once again, however, Gulotta's testimony about the phone number does not establish such a link. The transcript reflects that Gulotta confirmed that he spoke to Ronald Benjamin "about this telephone number" and that "the phone number was . . . his phone number." Nevertheless, the record also shows that Gulotta never testified how he learned of the

---

[4] Gulotta did not explain who told him that a Harold Benjamin worked at the lumber company or why he sought to make contact with Harold Benjamin at that time. However, other evidence established that while Gulotta and Cosby were investigating the series of larcenies, the Capitol Police received a call about a "suspicious person" at a building where a large number of larcenies had occurred. The police locked down the building, detained a suspect who matched surveillance video from several prior thefts, and identified the suspect as Harold Benjamin.

- 14 -

phone number about which he asked Ronald Benjamin or what specific telephone number they discussed. Consequently, Gulotta's testimony about Ronald Benjamin's statements regarding "this telephone number" did not prove that the outgoing number called from Rowlette's stolen phone after the theft was to any specific telephone to which Ronald Benjamin had access.

Accordingly, based on the record, the only statements of Ronald Benjamin to be evaluated for good cause to excuse due process confrontation are his statements identifying Annette Benjamin as his wife and the appellant as his brother.

Several of the factors comprising the "substantial guarantees of trustworthiness" test support the conclusion that these identifications, although testimonial hearsay, "meet[] . . . the reliability . . . test as a matter of law." See Henderson, 285 Va. at 327, 329, 736 S.E.2d at 906-07. One factor cites "detailed police reports (as opposed to mere summaries of such reports by probation officers)." Id. at 327, 736 S.E.2d at 906. Here, Sergeant Gulotta testified under oath, providing a far stronger basis for accepting the trustworthiness of the results of his investigation than would be provided by the mere submission of a police report through a probation officer. The hearsay, therefore, was limited to a single layer.

The appellant argues that even this single layer of hearsay was too much and that he was entitled to test Ronald Benjamin's statements because Ronald had been identified through a police database and had a reason to lie to Gulotta to absolve himself of criminal liability. This characterization fails to view the evidence, including the court's implicit credibility findings, in the light most favorable to the Commonwealth. See id. at 329, 736 S.E.2d at 907. Gulotta indicated that he "look[ed] up" Ronald Benjamin in a police database, and he confirmed that he "[found] out" who Ronald Benjamin was, but Gulotta did *not* convey that he found out anything

- 15 -

about Ronald Benjamin *by means of* the police database.[5]  He testified, by contrast, that when he went to what he thought was the workplace of the appellant, *Harold* Benjamin, he encountered not Harold but Ronald Benjamin.

Next, although Ronald Benjamin might have had an incentive to lie about whether he was the thief, Sergeant Gulotta did not take his word that the person in the surveillance videos who had signed his name to the log as Ronald Benjamin was not him.  Gulotta met Ronald within several weeks of a December 2014 theft he was investigating, and Gulotta determined immediately upon seeing Ronald, using his own senses, that Ronald "[a]bsolutely [did] not" "match" the person whom Gulotta had seen in the surveillance videos.  Cf. id. at 327, 736 S.E.2d at 906 (naming as a factor in the "substantial guarantees of trustworthiness" test the "corroboration of accusers' hearsay by third parties or physical evidence").

Additionally, Gulotta obtained a photograph of the appellant from Facebook, compared the photograph to the video surveillance from the VDOT building and "various places," and determined that the person in the videos was the appellant.  Further, the surveillance video still photos from the VDOT building on the date of the thefts and the Facebook photo were admitted into evidence.  This permitted the circuit court to independently determine whether the appellant was the person in the photos, and it is clear from the record that the court did so.

Finally, the appellant, who likely knew whether the challenged statements were true— *i.e.*, whether Ronald Benjamin was his brother and whether Annette Burwell Benjamin was his brother's wife—"fail[ed] to offer contradictory evidence," which the circuit court was entitled to consider under another factor of the "substantial guarantees of trustworthiness" test.  See id.

---

[5] Additionally, the appellant did not avail himself of the opportunity to inquire about this possible connection on cross-examination of Gulotta.

Thus, the only hearsay statements Gulotta obtained from Ronald Benjamin that incriminated the appellant were Ronald Benjamin's identifications of Annette Burwell Benjamin as his wife and the appellant as his brother, and the record contained good cause to admit these statements in the revocation proceeding without permitting the appellant to cross-examine Ronald.[6]

### III. CONCLUSION

We hold that, as to the testimony relating to the contents of the telephone records, the appellant waived any objection and, accordingly, that any error in admitting the records themselves was harmless. Regarding the challenged testimonial hearsay statements made by the appellant's brother, Ronald Benjamin, to Sergeant Gulotta, the record supports a finding either that the statements, if erroneously admitted, were harmless or that good cause permitted their admission over the appellant's due process confrontation objection. Consequently, the challenged rulings of the circuit court did not constitute reversible error, and we affirm the court's decision to revoke his sixteen-year suspended sentences and resuspend twelve years of those sentences.

Affirmed.

---

[6] In light of this result, we do not address whether, assuming any error, such error was harmless.